UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | CASE NO. 15-CR-10338-RGS | |
| ) | | |
| GERMAN HERNANDEZ ESCOBAR ) | | |
|     Defendant. ) | | |
| ) | | |

**DEFENDANT'S SENTENCING MEMORANDUM**

    Mr. Hernandez comes before the court for sentencing pursuant to a binding plea agreement which if accepted by the court anticipated a total sentence of 276 months (23 years) to be served concurrently with a sentence to be imposed by Judge Woodlock in a related gun case still pending when the plea was entered. This is a very substantial sentence, above what the defendant believes to be the correctly calculated guideline range, and more than sufficient punishment for the crimes to which defendant has pled guilty. Those crimes include RICO Conspiracy and Conspiracy to distribute marijuana, but specifically do not include the single racketeering acts of murder and attempted murder charged against Mr. Hernandez in the indictment.

    Due to an anomaly regarding crediting by the BOP of time served waiting trial on the two cases, the parties request that the court apply a downward adjustment of the sentence imposed here by 24 months to 252 months. This will implement the intent of the plea agreement that the total punishment for both cases would be 276 months served concurrently and that the defendant would receive credit for time served awaiting trial on both cases against that total concurrent sentence. See Plea agreement, Par. 5.

I.      **Sentencing Guidelines Calculation**

**Offense Conduct:**  Per the plea agreement the offense level is 33 based on foreseeable attempted murder. The defendant objects to probation's finding of responsibility for the Jose Aguilar Villanueuva (Fantasma) murder by a preponderance of the evidence as a matter of fact and law. With a 4 point leadership enhancement and a 3 point reduction for acceptance of responsibility the resulting Total Offense Level is 34.

**Villanueva Murder, PSR Par 25, 28 - 41**

Mr. Hernandez denies that he was part of a conspiracy to murder Villanueva. He also objects to being sentenced for conspiracy to murder Villanueva on the basis of a finding by probation by a preponderance of the evidence where he was charged with but specifically did not plead guilty to that crime.

It is Mr. Hernandez's position that he was a leader of the ELS clique for about six months prior to his arrest in March 2015. He says he was no longer the leader after he was arrested and the government agrees that others, specifically Jose Rene Andrade (Innocente) and Noe Salvador Perez-Vasquez (Crazy), became leaders after his arrest.

The Villanueva murder took place four months after Mr. Hernandez's arrest. It is Mr. Hernandez's position that, while he may have passed on what he heard in prison concerning Villanueva to others in the clique, he had no involvement in any investigation of Villanueva or any decision to kill him that resulted from any investigation, if there was one, and the government has no evidence to suggest that he did.

In fact, in those same recorded jail calls Mr. Hernandez discussed at least three other potential police informants. Specifically, he discussed the fact that Santos Portillo Andrade (Flaco) incorrectly implicated him in connection with the 2008 case and that he expected to receive paperwork from his attorney to prove that. It is clear from the calls that Mr. Hernandez is referring to the prior case because

he references 2009. That incident took place on Dec. 8, 2008 and Mr. Santos Andrade pled in 2009; Mr. Hernandez was deported before any plea or trial. Also there was never any paperwork showing that Villanueva was an informant in connection with Mr. Hernandez's 2015 arrest and the government does not claim that he was.

Unlike his codefendants Mr. Recines-Garcia and Mr. Jose Andrade (docket #s 2218, 2207 respectively) Mr. Hernandez did NOT admit to the Villanueva murder in his guilty plea and denies that he participated in any decision to kill Villanueva or indeed that he even knew about any decision to kill Villanueva before it happened.

To be clear, Mr. Hernandez specifically denies that by merely discussing the possibility that Villanueva was an informant or passing on information to that effect he in fact knew that Villanueva would be killed. As the government has alleged, MS-13 required investigation and proof before it would green light the murder of one of its members. Indeed. Mr. Hernandez specifically said with respect to the rumors concerning Villanueva, Don't take my word for it …," PSR par. 30.  The government has no evidence that Mr. Hernandez participated in or even knew about any investigation of Villanueva or the decision to kill him and Mr. Hernandez denies that he did.

As a matter of fact, probation is incorrect in finding Mr. Hernandez guilty of conspiracy to murder Villanueva and, as a matter of law, it is unconstitutional to sentence Mr. Hernandez based on a finding by a preponderance of evidence for a crime to which he specifically did not plead guilty.

**2008 attack, Par 25, 28 - 41**

Mr. Hernandez denies that he participated in the alleged assault and denies that these allegations constitute alleged attempted murder.

Prior to trial, the defendant filed 1) a motion to dismiss based on the government's agreement to allow Mr. Santos Andrade to plead in this case to assault not attempted murder and 2) a motion to suppress the show up ID as unreliable since according to the the police report the victim said Mr.

Hernandez was wearing different clothes than the assailant. Also, according to Mr. Santos Andrade's attorney, Mr. Santos Andrade agrees Mr. Hernandez wasn't there when the assault took place.  (Docket #1834)

In order to avoid a hearing on the motion, the government agreed to withdraw the allegation and not to submit any evidence of the event at Mr. Hernandez's trial.

Mr. Hernandez specifically did not plead guilty to this alleged attempted murder in the plea agreement.

In the plea agreement Mr. Hernandez did not plead guilty to any particular attempted murder just that he was aware that MS-13 of which he was a clique leader for a period of time countenanced attempted murders among other crimes.

**Criminal History**

The defendant does not believe he should be awarded 3 pints for the sentence imposed in the related DPW case after he entered his guilty plea here in which case he would be CHC I.  Alternatively, the defendant believes that CHC III overstates the seriousness of his prior record.

**Guideline Sentencing Range**

At Offense level 34 and CHC I the guidelines range would be 151-188 months. At CHC III , 188-235 months.

II.     **Below Guideline sentence: 3353(a) factors.**

The parties are in agreement that Mr. Hernandez would receive a total sentence of 276 months (23 years) for this and the related DPW case. That is not far below the guideline term of imprisonment of 300 months calculated by probation based on their finding by a preponderance of the evidence that he is guilty of conspiracy to murder Villanueva. Indeed, it is commensurate with sentences recommended by the government for Mr. Recines-Garcia (24 years, docket #2218) and Mr. Jose Andrade (24 yrs, 3 months, docket # 2207) both of whom specifically pled guilty to the Villanueva

murder and as to whom the government's evidence was strong. A sentence of 276 months is well above the top of the guideline range calculated correctly based on a guilty plea to foreseeable attempted murder even at the higher CHC calculated by probation. Thus the agreed upon sentence is more than commensurate with the seriousness of the crimes to which the defendant has pled guilty.

### III.    Adjustment for Credit for Time served for Concurrent Sentences

The plea agreement anticipated that the total punishment for both cases would 276 months served concurrently and that the defendant would receive credit for time served awaiting trial on both cases against that total concurrent sentence. See Plea agreement, Par 5.

An issue has arisen however due to the BOP's method of crediting time served in this instance. Judge Woodlock (DPW) sentenced Mr. Hernandez to 27 months. Because that DPW sentence was imposed first, it will be calculated first by the BOP. The DPW sentence will be credited 3/21/15 to 3/6/17 (see paragraphs 1 and 5 of PSR). This is between 23 and 24 months.

Since that would result in the DPW sentence being considered fully served by the time the sentence in this case is imposed, the BOP will not consider the sentence "concurrent" and the time spent awaiting trial "used up" on the DPW sentence will not be credited against any sentence imposed in this case. If that sentence was not fully served, the BOP would aggregate the two sentences and all time served would be credited against both sentences as anticipated by the plea agreement. See Addendum PSR, Probation Response to Objection #7, p 44.

The solution, which according to probation has been used by the court in similar situations in this MS-13 case, is to make a 24-month adjustment to the 276 month agreed upon sentence, which would be 252 months (240 plus 12 consecutive). Compare USSG 5G1.3(b).

For the sake of consistency with the C Plea agreement, probation has suggested that judgment state that the sentence is to be concurrent with that imposed in the DPW case.

### IV.    Other Issues

Mr. Hernandez requests that the court recommend to the BOP that he incarcerated near the

Boston area where many of his family members reside.

                                  Respectfully Submitted,

                                  GERMAN HERNANDES ESCOBAR,
                                  By his attorney,

                                  /s/ Joan M. Griffin
                                  Joan M. Griffin (BBO# 549522)
                                  PO Box 133
                                  Dublin, NH 03444
                                  Griffin@LawJMG.com, (617) 283-0954

September 4, 2018

## CERTIFICATE OF SERVICE

      I hereby certify that the above document was served on all parties of record by ECF filing on September 4, 2018.

                                  /s/ Joan M. Griffin
                                  Joan M. Griffin